# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**JOHN BENJAMIN SMITH, JR.,**<br><br>                    **Debtor**<br>―――――――――――――――<br><br>**LYNNE F. RILEY, CHAPTER 7 TRUSTEE,**<br>                    **Plaintiff**<br><br>**v.**<br><br>**INSTAMORTGAGE.COM and UNITED STATES OF AMERICA,**<br>                    **Defendants**<br><br>**and**<br><br>**UNITED STATES OF AMERICA,**<br>          **Crossclaim Plaintiff**<br><br>**v.**<br><br>**PHH MORTGAGE CORPORATION, d/b/a INSTAMORTGAGE.COM and JOHN BENJAMIN SMITH, JR.,**<br>          **Crossclaim Defendants** | **Chapter 7**<br>**Case No. 07-14013-FJB**<br><br><br><br><br><br>**Adversary Proceeding No. 13-1357** |

### MEMORANDUM OF DECISION

The complaint and crossclaims in this adversary proceeding seek to determine the validity of a

mortgage held by defendant PHH Mortgage Corporation, d/b/a InstaMortgage.com ("PHH"), as against

one-half of the debtor's interest in certain real property and the priority of various interests in the same

property.  The adversary proceeding is before the Court on four motions:  (i) a motion by the debtor to

dismiss the complaint and the crossclaim of the United States; (ii) a cross-motion by the United States

for declaratory relief and for relief from the automatic stay; (iii) a motion by PHH to dismiss the claims and crossclaims against it as time-barred; and (iv) a motion by the plaintiff chapter 7 trustee for judgment on the pleadings as to the validity and extent of PHH's mortgage.

**PROCEDURAL HISTORY**

On June 27, 2007, John Benjamin Smith, Jr. ("the Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the present bankruptcy case.  Lynne F. Riley (the "Trustee") was appointed chapter 7 trustee and continues to serve in that capacity.  On the date of the filing, the Debtor's assets included a single-family home in Cambridge, Massachusetts (the "Property"); and the Property was subject to a tax lien in favor of the United States (the "First IRS Lien") and, at least in part, to a mortgage in favor of PHH (the "Mortgage").  The United States now also asserts against the Property a second tax lien (the "Second IRS Lien"), which arose postpetition.  With his petition the Debtor filed a schedule of exemptions in which he claimed a homestead exemption as to the Property under Massachusetts law in the amount of $350,000.  No objection was filed to this claim of exemption.

On September 11, 2013, the Trustee filed the complaint commencing this adversary proceeding, and on October 29, 2013, she filed an amended complaint, the currently operative iteration (the "Amended Complaint").  It demands declaratory relief against PHH and the United States of America in three counts as follows:[1]

    (i)      in Count I, a declaration that the Mortgage (a) is subordinate to the First IRS Lien and (b) will continue to be subordinate to the penalty portion of that lien if and when the Trustee avoids that portion of the lien under 11 U.S.C. § 724(a)(1) and preserves the same for the benefit of the estate under 11 U.S.C. § 550;

---

[1] The original complaint also included a demand for relief against the Debtor, but the Amend Complaint does not.

(ii)     in Count II, a declaration that the Mortgage encumbers only one-half of the Debtor's

interest in the property, the half that belonged to a Michael Connolly when the

Mortgage was granted; and

(iii)    in Count III, a declaration that the Second IRS Lien is valid but subject to (and only to) (a)

the First Position IRS Lien (including the portion of the First Position IRS Lien that will be

preserved for the bankruptcy estate under 11 U.S.C. §§ 724(a) and 550), (b) PHH's

Mortgage against the fifty percent interest in the Property that formerly belonged to

Connolly, and (c) the Trustee's rights under 11 U.S.C. § 544(a), including as a

hypothetical bona fide purchaser of the Property.

In its answer to the Amended Complaint, the United States agrees with the Trustee as to the

declaratory relief sought in each count.  With its answer the IRS asserted crossclaims against PHH and

the Debtor for declarations that, in the event the Property is sold by the Trustee, the United States shall

be entitled to the following:

(i)      a distribution satisfying the First IRS Lien from the proceeds of the sale after the

payment of expenses of administration qualifying under § 506(c), except to the extent

that the Trustee exercises her right to avoid the penalty portion of said tax lien and

preserves the same for the estate under § 724(a) and § 550 ("First Cross Claim"[2]);

(ii)     a distribution satisfying the Second IRS Lien from the proceeds that remain after the

satisfaction of § 506(c) expenses and the First IRS Lien (hereafter referred to as the

"divisible proceeds") by dividing the divisible proceeds into two equal halves and

treating them as follows: (1) satisfying the claim of PHH first from one half of the

divisible proceeds and thereafter distributing the remainder, if any, to the United States;

and (2) distributing to the United States so much of the other half of the divisible

---

[2] The United States did not break down the declaratory relief it seeks into separate counts; the enumeration is my
own.

proceeds (up to the full amount thereof) as may be needed to satisfy the Second IRS

Lien, notwithstanding that the balance left to distribute to the Debtor in respect to his

homestead exemption may be less than the maximum amount of that exemption

("Second Cross Claim"); and

(iii)     to the extent that the Trustee avoids the penalty portion of the First IRS Lien and

preserves it for the estate under §§ 724(a) and 550, the United States may collect said

penalties from any remaining proceeds of the sale of the Property that would otherwise

be available to the Debtor as a result of his homestead exemption ("Third Cross Claim").

PHH filed an answer to the Amended Complaint in which it conceded nothing. Two months

later, PHH also moved under Fed R. Civ. P. 12(b)(6) to dismiss both the Amended Complaint and the

Crossclaim.  As to both, PHH argues that its mortgage is valid under Massachusetts law, that the Trustee

can therefore prevail only by exercise of her avoidance powers under 11 U.S.C. § 544(a), but that the

Trustee is time-barred from doing so by the two-year limitation in 11 U.S.C. § 546(a)(1)(A).  Though the

motion to dismiss purports to seek dismissal of the Amended Complaint and the Crossclaims in their

entirety, it does not address the issues of priority that would remain even if the Court were to rule for

PHH on the validity of its mortgage.

The Debtor, too, has moved under Rule 12(b)(6) to dismiss both the Amended Complaint

(though it states no claim against him) and the Counterclaims.  The asserted grounds for dismissal are

three:  that (essentially as PHH argues) the Amended Complaint is time-barred by 11 U.S.C. §

546(a)(1)(A); that the Trustee has released the Debtor from any and all causes of action; and that the

Amended Complaint is barred by laches, the Trustee having waited over six years to bring this action,

during which time the Debtor expended hundreds of thousands of dollars to preserve his home.  Though

this motion seeks in part dismissal of the Counterclaim, the Debtor's arguments address only the

Amended Complaint, not the Counterclaim. In addition, near the end of his motion to dismiss, the

4

Debtor indicates that, if the Trustee persists in prosecuting this adversary proceeding and selling the Property—which he suggests is an abuse of the Trustee's powers—he might commence a new case under chapter 13 of the Bankruptcy Code

Both the Trustee and the United States oppose the Debtor's motion to dismiss.  With its opposition, the United States has filed a cross-motion for (i) a declaration that the Debtor's filing of a chapter 13 petition at this juncture would be inappropriate and in bad faith and, in the alternative, (ii) an order that the automatic stay arising from any such petition shall be deemed modified to permit the Trustee's sale of the Property and the continuation of this adversary proceeding.  The Debtor filed no response to this cross-motion.

In addition, the Trustee has filed a motion for judgment on the pleadings.  The motion purports to seek judgment on the Amended Complaint as a whole and is not expressly limited to a particular count or defendant.  However, the memorandum submitted in support of the motion addresses only Count II, for a declaration that the Mortgage encumbers only one-half of the Debtor's interest in the property.  I therefore understand the motion to be limited to this count.   PHH opposes the motion.

At a hearing on all four motions, the Debtor withdrew the laches argument that he had advanced in support of his motion to dismiss.  At the close of the hearing, the Court afforded PHH, the Trustee, and the United States an opportunity to file supplemental briefs, which they did.  The Court then took the motions under advisement.

During the pendency of this adversary proceeding, there have been related developments in the bankruptcy case itself.  First, the Trustee sought and obtained authority to sell the Property to a third-party purchaser for $1,200,000 and has completed the sale of the property.  The Property was sold to the purchaser free and clear of liens, claims, interests, and encumbrances of any kind or nature, with

any liens, claims, interests, and encumbrances, as allowed, to attach to the proceeds of the sale.[3]  The

Debtor opposed the sale by objecting on the basis of (among other things) the same defense of laches

that he has raised in this adversary proceeding as a basis for dismissing the Amend Complaint and

Crossclaim.  In allowing the sale motion, the Court expressly ruled that this defense had no merit.  No

appeal was taken from the order approving the sale.

Second, after completion of the sale, the Debtor moved to amend his schedule of exemptions to

claim as exempt, pursuant to 11 U.S.C. § 522(g), those proceeds from the sale that are attributable to

the penalty portion of the First IRS Lien that the Trustee succeeds in avoiding under 11 U.S.C. § 724(a)(1)

and preserving for the benefit of the estate under 11 U.S.C. § 550 (the "Tax Penalty Proceeds").  The Tax

Penalty Proceeds are in the amount of $66,539; and the Debtor was seeking to claim this full amount as

exempt.  Over objections of the Trustee and the United States to this claim of exemption, the Court

allowed the amendment and the exemption.  The Trustee then appealed from that order to the

Bankruptcy Appellate Panel.  The matter was finally resolved by a settlement agreement among the

Debtor, the Trustee, and the United States.  The Trustee moved for approval of the settlement

agreement and served the motion on all creditors, including PHH; and no objection having been filed,

the Court approved the settlement.  In relevant part, the settlement agreement provided that upon the

Court's approval of the settlement agreement, (i) the Trustee shall pay fifty percent of the Tax Penalty

Proceeds ($33,269.50) to the United States and (ii) the bankruptcy estate shall be entitled to retain the

remaining fifty percent of the Tax Penalty Proceeds free and clear of liens, claims and interests, including

without limitation any lien of the United States pursuant to 11 U.S.C. §522(c)(2)(B) and any interest of

the Debtor.

It is undisputed that PHH has not filed a proof of claim in the bankruptcy case.

---

[3] In her sale motion, the Trustee stated:  "The Trustee believes that the priority of the [First IRS Lien] is undisputed
and therefore proposes to distribute the non-penalty portion of the [First IRS Lien] to the IRS at closing,"  The order
granting the sale motion did not expressly address this proposal.   It is unclear whether, at the closing, the Trustee
paid the non-penalty portion of the First IRS Lien

**JURISDICTION**

The matters before the court are (i) a complaint and crossclaim to determine the validity, priority, and extent of liens on property of the estate, (ii) a motion for determination that the filing of a new bankruptcy petition would be inappropriate and in bad faith, and (iii) a motion for an order that the automatic stay arising from any such petition shall be deemed modified to permit the Trustee's sale of the Property and the continuation of this adversary proceeding.  Each matter arises in a bankruptcy case and (at least in part) under the Bankruptcy Code and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  All are core proceedings within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(A), (B), (O), and (K) (core proceedings include (i) matters concerning the administration of the estate, (ii) the allowance and disallowance of exemptions from property of the estate, (iii) determinations of the validity, extent, or priority of liens, and (iv) other proceedings affecting the liquidation of the assets of the estate and adjustment of the debtor-creditor relationship).  Accordingly, the bankruptcy court has authority to enter final orders on them.

**DISCUSSION**

1.     **Debtor's Motion to Dismiss Complaint and Crossclaim**

The Debtor has filed a "Motion to Dismiss Complaint and Crossclaim."  In title it appears to seek dismissal of the Crossclaim, but in substance the motion and the arguments submitted in support of it address only the Trustee's Amended Complaint.  I therefore deny the motion as to the Counterclaim for lack of argument and of any true challenge to the Crossclaim.

That leaves the Amended Complaint.  The Debtor moves to dismiss the Amended Complaint, but the Amended Complaint neither names him as a defendant nor seeks relief against him; and he has not moved for leave to intervene.  Indeed, the Debtor seeks dismissal not of any demand for relief against

himself but only of Count II, which seeks relief solely against PHH.  I therefore will deny the motion as to the Amended Complaint for lack of standing.

This denial is of no consequence.  The Debtor advanced three grounds for dismissal.  The first, that the complaint is barred by laches, has been withdrawn.  The second, that the Trustee has released all claims against the Debtor, is of no moment because the Amended Complaint seeks no relief against the Debtor.[4]  And the third, which is neither withdrawn nor undeveloped, is nonetheless only a reiteration of arguments that PHH has advanced on its own behalf for dismissal of the same count; it makes no argument that will not otherwise be made and addressed.

## 2.        Cross-Motion of the United States

In response to the Debtor's indication that he was contemplating the filing of a new chapter 13 petition, the United States cross-moved for (i) a declaration that the Debtor's filing of a chapter 13 petition at this juncture would be inappropriate and in bad faith or, in the alternative, (ii) an order that the automatic stay arising from any such petition shall be deemed modified to permit the Trustee's sale of the Property and the continuation of this adversary proceeding.  The Debtor has filed no response.

The Court will deny the motion in both parts.  The first part, as a demand for declaratory relief, requires a showing that there exists an actual controversy.  28 U.S.C. § 2201(a); *City of Central Falls v. Central Falls Teachers' Union (In re City of Central Falls)*, 468 B.R. 36, 44-45 (Bankr. D. R.I. 2012).  While it is possible that an actual controversy existed when this motion was filed—because the Debtor was hoping to avert a sale of the Property by the Trustee—that sale has now occurred, and the Debtor's arguments against the sale were squarely addressed and rejected in the process of adjudicating the Trustee's motion for authority to sell the Property.  The Debtor has not filed a new bankruptcy petition and now appears unlikely to do so, the Property having been sold some months ago.  The circumstances

---

[4] In any event, the Debtor has wholly failed to develop this argument.  This is separate cause for rejection of the argument, especially where the defense in question is an affirmative defense.

in which the Debtor might now file a new petition are materially changed from those that existed when

the United States filed its cross-motion.  In short, I find that there exists at present no actual controversy

and that the motion amounts to a request for an advisory opinion regarding changing and uncertain

facts and circumstances.  I therefore deny the request for declaratory relief.

The alternate request, for relief from the automatic stay that would arise were the Debtor to file

a new petition, is denied as premature.  If a new case is commenced and relief from the automatic stay

becomes necessary, a motion for relief from stay can then be filed and adjudicated as quickly as need

be.

**3.    Motion of PHH to Dismiss Amended Complaint and Crossclaim**

PHH moves under Fed R. Civ. P. 12(b)(6) to dismiss both the Amended Complaint and the

Crossclaim.  As to both, PHH argues that its mortgage is valid under Massachusetts law, that the Trustee

can therefore prevail only by exercise of her avoidance powers under 11 U.S.C. § 544(a), and that the

Trustee is time-barred from doing so by the two-year limitation in 11 U.S.C. § 546(a)(1)(A). This is

essentially a challenge to Count II of the Amended Complaint; PHH advances no separate challenge to

the United States' Crossclaim.

PHH's argument is limited in scope.  It addresses only Count II of the Amended Complaint.  It

does not address Count I of the Amended Complaint, under which the Trustee would have the Court

declare that the First IRS Lien enjoys priority over the Mortgage (regardless of the scope of the latter).  It

does not challenge the validity or perfection of the Second IRS Lien.  And it does not take issue with the

standing of the United States, as holder of the Second IRS Lien, to dispute the perfection and priority of

the Mortgage vis-à-vis the Second IRS Lien.

PHH filed its motion as one under Fed. R. Civ. P. 12(b)(6), to dismiss for failure to state a claim

on which relief can be granted.  The Trustee contends that because PHH has already filed an answer, the

Court may treat the motion as one for judgment on the pleadings. The Trustee also goes further, stating:

> If the Court determines that its ruling relies on more than the Complaint and the [United States]'s crossclaim against the Debtor and [PHH] ("Crossclaim"), this Court may consider these matters and treat [PHH]'s motion to dismiss as a motion for summary judgment based upon the record before it.  Fed. R. Civ. P. 12(d), Fed. R. Bankr. P. 7012(d).  In doing so, the Court may grant judgment for the Trustee and/or the IRS as nonmovants. Fed. R. Civ. P. 56(f), Fed. R. Bankr. P. 7056.

Judgment on the pleadings is appropriate when, after the pleadings are closed, the Court can determine from the pleadings themselves that there is no material issue of fact and that one party is entitled to judgment as a matter of law.  *Flora v. Home Federal Sav. and Loan Ass'n*, 685 F.2d 209 (7th Cir. 1982); *Mennella v. Office of Court Admin.*, 938 F.Supp. 128, 131 (E.D.N.Y. 1996), *aff'd* 164 F.3d 618 (2d Cir. 1998).  PHH has answered the Amended Complaint, but its answer admits nothing and therefore establishes no factual record on which to proceed to judgment.  Judgment on the pleadings would therefore be inappropriate.

It would also be inappropriate to treat PHH's motion as one for summary judgment.  When, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  In this instance, I do not understand PHH to be relying on or presenting to the Court any matter outside the pleadings.  I therefore will treat the motion as one under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009).  A court must accept as true the factual allegations of the complaint but not the legal conclusions, even if couched as facts. *Ashcroft v. Iqbal*, 556 U.S. at 678.

a.      **Facts**

The facts, as recited in the Amended Complaint and appearing in the mortgage attached

thereto, are as follows.

1.      The Debtor first took title to the Property pursuant to deed dated May 25, 1993, and

recorded at the Middlesex South Registry of Deeds at Book 23221, page 391.

2.      On July 25, 2006, the IRS recorded a notice of federal tax lien against the Debtor (the

"First IRS Lien") at the Middlesex South Registry of Deeds at Book 47856, Page 415.

3.      By deed dated September 12, 2006 and recorded at the Middlesex South Registry of

Deeds at Book 48150, Page 534, Smith deeded the Property to himself and Michael A. Connolly

("Connolly") as tenants in common.

4.      By instrument dated November 20, 2006 and recorded on November 28, 2006 at the

Middlesex South Registry of Deeds at Book 48150, page 534, Connolly granted a mortgage on the

Property to InstaMortgage.com in the amount of $898,000.00 (the "Mortgage").

5.      The Mortgage is attached to the Amended Complaint as Exhibit D.[5]

a.      In the Mortgage "Borrower" is a defined term.  Its definition states:  "'Borrower'

is Michael A Connolly, an unmarried person[.]  Borrower is the mortgagor under this

Security Instrument."  The Debtor is not included in this definition of Borrower.

b.      Immediately following its initial definitions section, the Mortgage includes a

section entitled "Transfer of Rights in Property," which includes the Mortgage's granting

clause.  In relevant part, the granting clause states:  "Borrower does hereby mortgage,

grant and convey" to the lender's nominee the Property.

---

[5] The Amended Complaint does not squarely or expressly allege that Exhibit D is the mortgage in question.  Rather, it states:  "See said mortgage [referring to the Mortgage] attached as Exhibit D."  It is clear, however, that by this language, the Trustee meant that Exhibit D is the Mortgage, and that PHH has so understood the language in question.  I therefore regard that Mortgage as incorporated into the Amended Complaint.  The description of the Mortgage that appears in subparagraphs 5(a)-(g) is my own; it does not appear in the Amended Complaint.

c.     The Debtor initialed each page of the Mortgage, as did Connolly.

d.     The final page of the Mortgage states: "By signing below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it."  Just below this language, on a line over the typed-in name "Michael A. Connolly," after which appears the designation "-Borrower," Michael Connolly signed the Mortgage.   Immediately after Connolly's signature line is another signature line on which appears another signature.  The parties appear to agree that this other signature is the Debtor's signature, but the Mortgage does not indicate whose signature it is; no name appears below the signature line. However, following the blank space where a typed-in name should appear is the word "-Borrower."

e.     Following the signature page is a notarization of Connolly's signature.  The Mortgage includes no notarization of the Debtor's signature.

f.     Attached to the Mortgage is a rider entitled "Fixed/Adjustable Rate Rider" (the "Rider").  In relevant part, its first paragraph states:  "This Fixed/Adjustable Rate Rider [. . .] is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to InstaMortgage.com[.]"  The Debtor initialed each page of the Rider, as did Connolly.  The final page of the Rider states: "By signing below, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider."  Just below this language, on a line over the typed-in name "Michael A. Connolly," after which appears the designation "-Borrower," Michael Connolly signed the Rider. Immediately after Connolly's signature line is another signature line on which appears

another signature.  The parties appear to agree that this other signature is the

Debtor's—and for purposes of this motion I accept that it is the Debtor's—but the Rider

does not indicate whose signature it is; no name appears below the signature line.

However, following the blank space where a typed-in name should appear is the word

"-Borrower."

g.       Except in the form of his signature as it appears on the signature pages of the

Mortgage and the Rider, the Debtor's name does not appear in the Mortgage or the

Rider.  The Debtor's signatures on the Mortgage and the Rider are not sufficiently plain

and legible as to permit a reader or recording clerk to know whose it is without recourse

to extraneous evidence.

6.       The Mortgage is properly indexed against Connolly in the grantor index at the Middlesex

South Registry of Deeds.

7.       The Debtor did not execute the promissory note associated with the Mortgage.

8.       The Debtor is not named as a mortgagor or borrower in the Mortgage, and the Debtor's

name is not included in the granting clause of the Mortgage.

9.       Accordingly, the Mortgage is not indexed against the Debtor in the grantor index at the

Middlesex South Registry of Deeds.

10.      By deed dated June 20, 2007 and recorded at the Middlesex South Registry of Deeds on

June 26, 2007 at Book 49667, page 66, the Debtor and Connolly deeded the Property back to the Debtor

individually.

11.      Also on June 26, 2007, the Debtor filed and recorded a declaration of homestead

("Homestead") at the Middlesex South Registry of Deeds at Book 49667, Page 68.

12.     On June 27, 2007 (the "Petition Date"), the Debtor filed a Chapter 7 petition and
thereby commenced the bankruptcy case in which the present adversary proceeding arises.  Lynne F.
Riley was duly appointed as Trustee of the Debtor's Estate.

13.     On August 29, 2012, the IRS recorded a notice of federal tax lien ("Second IRS Lien")
against the Debtor at the Middlesex South Registry of Deeds at Book 59876, Page 439.

14.     On October 19, 2012, the IRS recorded an amended notice of federal tax lien against the
Debtor, amending its Second IRS Lien, at the Middlesex South Registry of Deeds at Book 60200, Page
320 ("Amended Second IRS Lien"). The payoff for the Amended Second IRS Lien as of July 29, 2013 was
$281,649.36.

**b.     Whether the Debtor granted PHH a mortgage as to his interest in the Property.**

PHH's argument has three parts:  (i) under Massachusetts law, the Mortgage constitutes a valid
and effective grant by the Debtor to PHH of a mortgage on his half interest in the Property; (ii) in order
to prevail, the Trustee must therefore avoid the mortgage granted by the Debtor as to his half interest;
and (iii) the Trustee is time-barred by 11 U.S.C. § 546(a) from bringing an avoidance action.  The Trustee
and United States accept part (iii):  they concede that the Trustee is time-barred from bringing an
avoidance action.  But they disagree with parts (i) and (ii):  they maintain that the Mortgage was *not*
effective under Massachusetts law to grant to PHH a mortgage on the Debtor's half interest in the
Property; and, for that reason and others, they further maintain that the Trustee need not have
recourse to any time-barred right or power in order to prevail here.  All three parties agree that if PHH is
wrong about part (i)—its contention that the Mortgage was a valid grant by the Debtor of a mortgage as
to his half interest—then the complaint states a claim on which relief can be granted.  I therefore turn
first to part (i).

The Amended Complaint, whose allegations I am bound to accept for purposes of this motion,
alleges that before the Mortgage was executed, the Debtor and Connolly owned the property as tenants

in common.  As a tenant in common with the Debtor, Connolly lacked authority to grant a mortgage on

or otherwise convey the *Debtor's* interest in the Property, and PHH does not contend otherwise.  Only

the Debtor could grant a mortgage as to his half interest.  The question presented then is whether,

under Massachusetts law, the Mortgage was a valid conveyance by the Debtor of his half interest.

PHH argues that the Mortgage, which was attached to and incorporated into the Amended

Complaint by reference, was indeed a valid grant of a mortgage as to the Debtor's interest.  PHH

acknowledges that the Mortgage's definition of Borrower does not include the Debtor, but PHH

contends that the definition was amended both by the Debtor's signing of the Mortgage above the word

"Borrower" and by the Debtor's signing of the Rider above the word "Borrower," and therefore the

Debtor is a Borrower within the meaning of that word as used in the granting clause.  The Trustee, citing

case law from other jurisdictions addressing similar facts, argues that the Debtor's signatures over the

word Borrower did not remedy the omission of his name from the definition.

The issue in question—whether the Debtor has granted to PHH a mortgage on his half

interest—is not addressed by the Bankruptcy Code and therefore is one of state law.  *Butner v. United

States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the

determination of property rights in the assets of a bankrupt's estate to state law.").  The applicable law

in this instance is that of the Commonwealth of Massachusetts.  When ruling on an issue of state law,

this Court must rule as it believes the highest court of the state would rule, *In re Miller*, 113 B.R. 98, 101

(Bankr. D. Mass. 1990), employing as far as possible the method and approach announced by that court.

*Cahoon v. Shelton*, 647 F.3d 18, 22 (1st Cir. 2011).

(i)      **The Mortgage without the Rider**

I begin by considering the Mortgage itself without benefit of the Rider, which admittedly

amends it and whose import I will address later.  Would the "Mortgage sans Rider" be deemed in

Massachusetts law to grant a mortgage on the interest of the Debtor?  No decision of the Massachusetts

Supreme Judicial Court is directly on point, but the issue has been addressed by other federal courts in

this district applying Massachusetts law.  In *Agin v. South Point, Inc. (In re Kurak)*, 409 B.R. 259 (Bankr. D.

Mass. 2009), *aff'd*  433 B.R. 52 (D. Mass. 2010), the Bankruptcy Court was asked to decide whether the

defendant had a valid mortgage against the debtor's interest in the property where, when the mortgage

was executed, her husband was the only defined Borrower but the debtor initialed each page and signed

the instrument over the word "Borrower" on the signature page, and, after delivery of the deed, the

mortgage lender's agent altered the mortgage to include the debtor's name as a grantor in the granting

clause.  Judge Joan N. Feeney ruled that the alteration was material and void and that the document,

without benefit of the alteration, was ineffective to grant a mortgage as to the debtor's interest in the

property.  *Agin v. South Point, Inc.*, 409 B.R. at 266-67.  On appeal, the District Court affirmed, ruling

that the alteration was material because, before the alteration, the mortgage deed had been ineffective

as to the debtor's interest in the property:

> Here, to be sure, the Debtor signed the mortgage above the word
> "Borrower" and beneath the language that "Borrower accepts and
> agrees to the terms and covenants contained in pages 1 through 12 of
> this Security Instrument and in any Rider executed by Borrower and
> recorded with it." However, at the time the Debtor signed the mortgage
> and Lindley notarized her signature, she was not a defined Borrower in
> the granting language on the first page of the mortgage, and therefore
> the mortgage cannot be interpreted to bind her as such. . . .   Adding the
> Debtor's name to the definition of Borrower after she executed the
> mortgage materially altered the mortgage by purporting to secure an
> interest in the Property that she did not grant when her signature was
> notarized.

*Agin v. South Point, Inc.*, 433 B.R. at 58.  In their respective decisions, both the Bankruptcy Court and the

District Court relied on *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131–32 (Mo. 2007), in which the

Missouri Supreme Court, applying Missouri law, held that a deed of trust defining "Borrower" as the

husband but not the wife "cannot reasonably be construed to mean that [the wife] also is a borrower

under the deed of trust" even though she initialed each page of the document and signed on the final

page.  *Ethridge* and the two *South Point* decisions are consistent with the rulings of every court to have

addressed the issue.  See *Hardesty v. Huntington National Bank (In re Payne)*, 450 B.R. 711, 720 (Bankr.

S. D. Ohio 2011) (applying Ohio law); *Sullivan v. Mortgage Electronic Registration Systems, Inc. (In re

Wirth)*, 355 B.R. 60 (N.D. Ill. 2005) (applying Illinois law); *BAC Home Loans Servicing L.P. v. Johnson (In re

Crouch)*, 2011 WL 3608095, 2 (E.D .Ky. 2011) (applying Kentucky law); *Gilchrist v. United Bank& Trust Co.

(In re Gilchrist)*, 444 B.R. 343 (Bankr. E.D. Ky. 2010) (applying Kentucky law); *Schlarman v. Chase Home

Finance, LLC (In re Padgitt)*, 2008 WL 4191517  (Bankr. E.D. Ky. 2008) (applying Kentucky law).  I am

satisfied that these decisions are consistent with Massachusetts law as the Supreme Judicial Court

would construe it.

In Massachusetts as elsewhere, a mortgage—whether understood as a lien or, as in

Massachusetts, as a form of title subject to an equity of redemption—is an interest in land.  One can be

conveyed only by a writing, which writing must *itself* effect the conveyance.[6]  This requires words of

conveyance by each individual whose interest the document, once executed and delivered, would

convey.  In this instance, the operative document, the Mortgage, includes an express definition of the

term Borrower and then almost immediately thereafter employs that term in the granting clause.

Nowhere in the Mortgage does there appear an express amendment of that definition.  Where a

mortgage goes to the trouble of clearly and expressly defining a term, a court should not read other

parts of the document to implicitly amend the definition and thus undercut the definition.  This is reason

enough to construe the Mortgage as a conveyance by Connolly alone.

Nor is it fair to read the signature page of the Mortgage as amending the definition of Borrower.

The express purpose of the signature is to indicate Borrower's acceptance and agreement:  "By signing

below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument

and in any rider executed by Borrower and recorded with it."  The signature's purpose is not to amend

the term Borrower.  The signature clause does not state that anyone who signs below shall be deemed a

---

[6] It is not enough for the document to supply evidence that an individual who did not actually thereby convey an interest perhaps meant to do so.

Borrower, only that "Borrower's" signature shall indicate acceptance and agreement.  The word

Borrower in that sentence must have meaning even before the document is signed, and it does,

referring to Connolly alone.

PHH makes much of the fact that the Debtor signed over the word Borrower:  PHH argues that

this amounts to an indication by the Debtor that he was a Borrower.  I do not know the Debtor's

intent—it is not among the facts I must accept for purposes of the present motion. But PHH's

construction is not the most natural reading of the Debtor's having signed where he did.  The word

Borrower below his signature appears off to the side and following a dash:  "-Borrower."  It is intended

to refer to the individual whose name is printed to the left of "-Borrower," but no printed name appears

there.  The Debtor thus signed on a line that was in effect blank.  His signature in this place is hardly a

clear indication that he believed himself to be signing as a Borrower and mortgagor.  It can as easily—

and in view of the earlier definition of Borrower, more naturally—be construed as an indication that he

was signing for a different purpose.

### (ii)    The Mortgage as Amended by the Rider

PHH also argues that if the definition of Borrower was not amended by Debtor's signature on

the Mortgage, it was at least amended by the Rider.  The Rider expressly states that it "is incorporated

into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the

"Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's

Fixed/Adjustable Rate Note (the "Note") to InstaMortgage.com[.]"  PHH argues that this language, in

conjunction with the fact that the Debtor signed the Rider and therefore is among "the undersigned,"

effectively amended the definition of Borrower for purposes of the "Mortgage" as a whole.  In support

of this argument, PHH cites supporting authority as to the law in Ohio and Kentucky.  See *Rhiel v. BAC*

*Home Loans Servicing, LP (In re Foster)*, 448 B.R. 914, 921 (Bankr. S.D. Ohio 2011) (under Ohio law,

mortgage is valid against debtor's half-interest in property where debtor's name didn't appear in the

granting clause of the mortgage but rider to mortgage specifically amended the definition of "Borrower" to include the "undersigned," noting "the Rider is the true lynchpin of this case because it expressly states that it amends and supplements the Mortgage. This language of the Rider is clear and is not susceptible to conflicting interpretations."); *Rowe v. Fifth Third Mortgage Company (In re Rowe)*, 452 B.R. 591, 596-97 (6th Cir. B.A.P. 2011) (applying Kentucky law on similar facts to Foster, holding that mortgage lien was enforceable against debtor-wife's interest in property because the mortgage as a whole, especially in the rider, sufficiently identified her as a mortgagor).  See also *Nelson v. Countrywide Home Loans, Inc. (In re Barger)*, 490 B.R. 744 (Bankr. S.D. Ohio 2012) (applying Ohio law and following *Foster*).

        In response, the Trustee and United States advance several counterarguments.  First, the Trustee argues that the reasoning of the cases cited by PHH is flawed:  the Rider expressly states that it amends and supplements "the Mortgage . . . given by the undersigned," but the Debtor did not grant the mortgage, and therefore the Rider does not amend any mortgage as to his interest.   Second, citing *Agin v. South Point, Inc.*, 409 B.R. at 266-67, the Trustee argues that the amendment is too remote from the granting clause and inconspicuous; under Massachusetts law, the Trustee maintains, one cannot be required to scour the instrument looking for clues of whether the signatory that is not named in the granting clause of the mortgage is somehow bootstrapped into becoming a mortgagor by buried language elsewhere.  Third, the Trustee argues that the entire rider expresses that the borrower is the same borrower that signed the note and granted the mortgage, neither of which the Debtor did. Fourth, the Trustee points out that the cases cited by PHH concern the laws of Ohio and Kentucky, not of Massachusetts.  And fifth, the United States argues that the Rider adds nothing because it refers to a note, and Smith could have been co-signing the Rider as a co-borrower on the note (even though that is not the case).

I am persuaded that the Rider is not effective to amend the definition of Borrower.  As the

Trustee points out, the Rider expressly states that it amends and supplements "the Mortgage . . . given

by the undersigned."[7]  It assumes that a mortgage has already been given by a separate document,

amends only the mortgage so given, and includes no new or supplemental granting clause.  As I have

held above, the Mortgage itself did not grant to PHH a mortgage on the Debtor's interest in the

Property.  The Rider therefore amends only the mortgage given by Connolly.  It does not even purport to

bootstrap into existence a mortgage of the Debtor's interest.  For this reason, I disagree with the cases

cited by PHH and hold that, under Massachusetts law, the Rider would not be construed to amend the

definition of Borrower or the breadth of the granting clause in the Mortgage.

Even if the Rider could somehow be deemed to amend into existence a mortgage on the

Debtor's interest, it would do so only if in fact it did amend the definition of Borrower.  For the following

reasons, I conclude that the Rider does not amend the definition.  First, the original definition is formal,

categorical, and specific: "Borrower is Michael Connolly."  The alleged amendment to the definition

lacks this formality, fails to acknowledge the earlier definition and that this new definition differs from it,

fails to indicate that the new definition replaces or supplant the old, and, unlike the original, does not

attempt to identify the new Borrower by name or names.  It does not say, "Notwithstanding the

definition of Borrower appearing on page 1 of the Mortgage, Borrower in the Mortgage and this Rider

shall mean Michael Connolly and John Benjamin Smith."  It simply uses the term "the undersigned" and

attaches to it the label "Borrower."  To be sure, this is a manner in which lawyers define terms in deeds

and contracts.  Still, if it is an amendment at all, it is inconsistent in form and substance with the earlier

definition of this same term, and it leaves the reader with two inconsistent definitions.  Since a

document should not be construed to be internally inconsistent, Massachusetts law would likely

construe the term Borrower in the Rider as effecting no amendment.  This would be consistent with the

---

[7] The term "Mortgage" as used in this sentence from the Rider is capitalized, but it is not defined in the Rider or even in the Mortgage.

signature page of the Rider, on which the only signatory whose name is printed on the line below his signature is Connolly.  It would also be consistent with those instances in which the word Borrower is used in the Rider to refer to Connolly alone:  most notably, in the very first sentence, where the Rider speaks of the Mortgage's having been given "to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to InstaMortgage.com[.]"[8]  It is clear from the Rider itself that its use of the word Borrower may mean Connolly alone and not also the Debtor.

I conclude that the Trustee has pled a plausible basis for determining that the Mortgage, even as amended by the Rider, does not constitute a conveyance by the Debtor of his interest in the Property.

**c.      Whether the Trustee is Time-Barred from Invoking § 544 Rights and Powers.**

PHH further argues that in order to prevail, the Trustee must avoid the mortgage granted by the Debtor as to his half interest, but the Trustee is time-barred by 11 U.S.C. § 546(a) from bringing an avoidance action.  I have ruled that the Trustee has articulated a plausible basis for determining that PHH has no mortgage at all on the half-interest that belonged to the Debtor.  Therefore, the Trustee need not have recourse to avoidance powers or other rights under 11 U.S.C. § 544 to prevail on Count II of her Amended Complaint, the only count this motion puts in issue.  I note moreover that the Amended Complaint does not include a count for relief against PHH in which the Trustee invokes her rights and powers under § 544; she invokes § 544 only in Count III, which affects only the Second IRS Lien.  For both of these reasons, these remaining arguments are moot.

---

[8] This is hardly an isolated instance.  The next two sentences of the Rider include three more instances where Borrower means only Connolly:  "THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.  THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY."  Connolly being the only obligor on the Note, the interest rate and obligation to pay are his alone.

**4.**        **Trustee's Motion for Judgment on the Pleadings**

Lastly, the Trustee has moved for judgment on the pleadings against PHH.  As I noted earlier,

PHH has answered the Amended Complaint, but its answer admits nothing and therefore establishes no

factual record on which to proceed to judgment.  Judgment on the pleadings would therefore be

inappropriate.  The motion for judgment on the pleadings will accordingly be denied.


**CONCLUSION**

For the reasons set forth above, the Court will enter separate orders denying each of the four

motions that is the subject of this memorandum of decision.


Date:  July 15, 2015                                   _____

                                                      Frank J. Bailey
                                                      United States Bankruptcy Judge